**Village of Willowbrook, Plaintiff-Appellee, v.
Paul J. Miller, Defendant-Appellant.**

**Gen. Nos. 65–128M, 65–129M.**

Second District.
June 16, 1966.

Edward F. Zahour, of Chicago, for appellant.

Popejoy, Bowman, Unverzagt & Nelson, of Glen Ellyn, for appellee.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

On July 1, 1965, the defendant, Paul J. Miller, was served an unverified "Illinois Uniform Traffic Ticket and Complaint" by an officer of the Village of Willowbrook Police Dept. A private citizen was the complainant and the offense charged was Reckless and Careless Driving on a residential street in violation of a village ordinance. The ticket was not in the form referred to in subdivision C of the Supreme Court Rule, effective on January 1, 1964, relating to procedures in traffic cases, quasi-criminal cases and certain misdemeanors. Chap 110, following sec 101.72, Ill Rev Stats 1965. The ticket purported to bring the ordinance violation in the name and by the authority of the People of the State of Illinois, and concluded that the offense was against the peace and dignity of the People of the State of Illinois. On the date specified on the ticket the defendant appeared, pleaded not guilty, and the case was then continued for trial to August 27, 1965.

On August 1, 1965, a "Non-Traffic Complaint and Arrest Ticket" charging the defendant with having committed the offense of Disorderly Conduct in violation of a village ordinance was subscribed and sworn to by a village police officer before a notary public, one Mark E. Tazelaar. On the following day, August 2, 1965, a warrant for the arrest of the defendant was issued by an Associate Circuit Court Judge; and two days thereafter, on August 4, 1965, the warrant was executed. As appears from the return of the warrant, the arresting officer was the same Mark E. Tazelaar before whom in his capacity as a notary public the complaint was initially verified. Upon execution of the warrant the defendant was required to post a One Hundred ($100) Dollar cash bond. The defendant thereafter appeared

in court as directed, executed a jury waiver, pleaded not guilty, and the case was thereupon continued for trial to August 27, 1965.

On August 27, 1965, the defendant appeared in court with his counsel on both the traffic and the disorderly conduct charges, the matters were treated as consolidated for trial, and the defendant filed a Motion to Dismiss both complaints. In effect, the motion attacked the validity of the traffic complaint on the grounds that it was not verified, and the disorderly conduct complaint on the grounds that it was not verified before a judge or magistrate. The motion was denied in both respects, and the consolidated matter continued for trial to September 24, 1965. On the continued trial date defendant's counsel filed a Motion to Reconsider his Motion to Dismiss which was likewise denied. Over defendant's objection, the consolidated trial thereafter ensued with the plaintiff presenting evidence and the defendant offering no defense nor apparently participating in the proceeding. The defendant was found guilty of both charges, with fines in the amount of One Hundred ($100) Dollars, plus cost and Twenty-Five ($25) Dollars, plus cost being imposed on the disorderly conduct and traffic complaints, respectively. This appeal followed.

 We first consider the traffic complaint. It is the contention of the defendant that the "Illinois Uniform Traffic Ticket and Complaint" before us is void as not being verified. Athough we are satisfied that the conviction on the traffic complaint could properly be set aside on the grounds that the traffic ticket and complaint before us was not in the form referred to by Supreme Court Rule, supra, and purports to bring an ordinance violation in the name and by the authority of the People of the State of Illinois and concludes that the violation is against the peace and dignity of the same

People of the State of Illinois (see City of Chicago v. Berg, 48 Ill App2d 251, 257, 199 NE2d 49 (1964)), we shall consider the defendant's contention.

The necessity of verification of a uniform traffic ticket and complaint, and, for that matter, of any complaint, is considered at some length by the Supreme Court in the recent case of The People v. Harding, 34 Ill2d 475, 216 NE2d 147. Beginning with the observation that the Supreme Court Rule adopting a traffic ticket and complaint does not even contemplate verification, the court analyzes the ticket and complaint in terms of its constitutional sufficiency. Distinguishing between a sworn complaint as a prerequisite to the issuance of an arrest warrant and a complaint as a document by which a criminal prosecution may be commenced, the court concludes that the Constitution (section 6, article II of the Constitution of Illinois) does not require a sworn complaint as a jurisdictional prerequisite to the prosecution of a criminal offense but only as a prerequisite to the issuance of an arrest warrant. As the opinion points out, however, analysis of the want of verification in terms of constitutional requirement does not end the matter. The necessity of verification of a complaint is expressly set forth in article 111–3(b) of the Code of Criminal Procedure of 1963, which but continues this long standing statutory requirement. (C 38, § 663, Ill Rev Stats 1961.)

We, therefore, adopt the ruling of the Harding case and hold that while there is no constitutional requirement that a complaint be verified in order to sustain a criminal prosecution, nevertheless, if the statutory deficiency of want of verification is raised by appropriate pretrial motion or objection, the prosecution can only proceed on a verified complaint. The want of verification having been appropriately raised in the case before us, the unverified complaint cannot sustain the judgment, and it is, accordingly, reversed.

34

We turn now to a consideration of that portion of the defendant's motion directed at the disorderly conduct complaint. Although scarcely comprehendable, the motion appears to attack the notary verified complaint in terms both of its sufficiency to sustain a criminal prosecution and as a complaint upon which a warrant lawfully can issue.

Considering first the notary verified complaint's sufficiency to support a criminal prosecution, we reiterate the holding of the Harding case that the Constitution does not require a sworn complaint as a jurisdictional prerequisite to the prosecution of a criminal offense; in short, a complaint as a document by which a prosecution may be commenced constitutionally need not be verified at all. As we have discussed above, the verification of a complaint as a prosecution commencing document, however, has always been a statutory requirement, the requirement being now set forth in article 111–3(b) of the Code of Criminal Procedure of 1963, supra. The Statute simply provides that the "Complaint shall be sworn to and signed by the Complainant"; it contains no limitation or qualification upon the person or officer before whom the complaint is to be sworn to and signed. Literally construed, the Statute is concerned only with the fact of verification, and not with the officer before whom verification shall be effected.

█ Therefore, we are of the opinion that the Statute allows verification before any officer empowered to administer oaths. A complaint verified before a notary public satisfies the Statutory requirement and is sufficient to sustain a criminal prosecution.

Finally, we turn to a consideration of the sufficiency of a notary verified complaint as the basis for the issuance of an arrest warrant. In effect, the defendant contends that a complaint subscribed and sworn to before a notary public which is then presented to a court which examines the complainant under oath is not suf-

ficient as a complaint upon which a warrant lawfully can issue. We cannot agree with the defendant's contention in this respect. The procedure for the issuance of an arrest warrant is expressly set forth in article 107–9 (b) (4) of the Code of Criminal Procedure of 1963. (C 38, § 107–9 (b) (4), Ill Rev Stats, 1963.) This procedure simply requires that when a complaint, defined as a verified written statement other than an information or an indictment which charges the commission of an offense, is presented to a court, the court shall examine upon oath or affirmation of the complainant or other witnesses. The definition of the word "Complaint" in article 102–9 (chap 38, § 102–9, Ill Rev Stats, 1963), as well as the form of the complaint as contained in article 107–9 (b) (4), supra, both contemplate that the complaint shall be subscribed and sworn to by a complainant at the time that it is presented to the court. When presented with the verified complaint, it is the court's function in accordance with the provision of article 107–9 (c) (chap 38, § 107–9 (c), Ill Rev Stats, 1963), to determine from the contents of the complaint and its examination of the complainant or other witnesses whether or not the person against whom the complaint was made has committed an offense.

An examination of the record before us indicates that the complaint charging the offense of disorderly conduct was subscribed and sworn to by the complainant on August 1, 1965, before a certain notary public, and that thereafter on August 2, 1965, the complainant presented the verified complaint to the court which after examination of the complainant under oath determined that the defendant had committed the complained of offense and accordingly issued a warrant of arrest. We are, thusly, of the opinion that the complaint verified before a notary public and presented to the court by the complainant who is thereupon examined under

oath by the court was sufficient as the basis for the issuance of the warrant of arrest.

The judgment of the trial court on the traffic complaint, being case Number 65–128M, is accordingly reversed, and its judgment on the disorderly conduct complaint, being case Number 65–129M, is affirmed.

Judgment affirmed in case No. 65–129M.

Judgment reversed in case No. 65–128M.

DAVIS and ABRAHAMSON, JJ., concur.